GLASSCOCK et al. v. LIVERPOOL, LONDON & GLOBE INS. CO. (No. 5594.)

(Court of Civil Appeals of Texas. Austin. May 17, 1916. Rehearing Denied June 28, 1916.)

1. INSURANCE ☞668(1)—CANCELLATION—AUTHORITY OF AGENT—QUESTION FOR JURY.

In an action on a fire policy, where defendant claimed that the original policy had been canceled and a smaller policy substituted, *held*, on the evidence, that the authority of the insured's attorney to accept a notice of cancellation and substitution was for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1751, 1757; Dec. Dig. ☞668(1).]

2. INSURANCE ☞229(1) — FIRE INSURANCE — CANCELLATION OF POLICY—NECESSITY OF NOTICE TO MORTGAGEE.

Under a policy of fire insurance on a warehouse, making loss payable to a mortgagee as her interest might appear subject to the terms of the policy, and providing that it might be canceled by the insurer by giving five days' notice of such cancellation, a cancellation by the insurer was not binding upon the mortgagee, to whom no notice of cancellation was given.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 501; Dec. Dig. ☞229(1).]

Appeal from District Court, Hays County; Frank S. Roberts, Judge.

Action by W. D. Glasscock against the Liverpool, London & Globe Insurance Company, with petition of intervention by Fannie Manlove, seeking judgment against defendant. Judgment for plaintiff, motions by plaintiff and intervener for new trial overruled, and they except and appeal. Reversed, and cause remanded for another trial.

R. E. McKie and E. M. Cape, both of San Marcos, for appellant Glasscock. Barber & Johnson, of San Marcos, for appellant Manlove. Thompson, Knight & Harris and Geo. S. Wright, all of Dallas, for appellee.

KEY, C. J. Appellee concedes the correctness of appellant's statement of the nature and result of this suit, which is as follows:

"This is an action by plaintiff W. D. Glasscock against the Liverpool, London & Globe Insurance Company of London, England, in which suit Miss Fannie Manlove intervened. On February 10, 1915, plaintiff filed his original petition, same being a suit upon an insurance policy for the sum of $1,750, alleging that on the 26th

day of September, 1914, plaintiff was the owner of a certain warehouse building in the town of San Marcos, and that plaintiff also held a policy of insurance against loss by fire upon said building in the sum of $1,750, written by defendant; that on said date said building was totally destroyed by fire. Plaintiff further alleged that said policy was still in full force and effect, and that premium had been paid on same, but that shortly prior to the date of said fire defendant had attempted, without notice to plaintiff or without his knowledge or consent, to reduce the insurance on said building, and to accomplish that purpose wrote another policy thereon, which had been mailed to plaintiff, but never received by him, said second policy being for the sum of $1,250. Plaintiff prayed judgment for the full amount of his first policy for $1,750, with interest thereon from date of fire, and all costs, and, in the alternative, for judgment upon the second policy for $1,250. The two policies were attached to and made part of said petition.

"On March 11th, Miss Fannie Manlove filed her petition of intervention, alleging that she had a valid subsisting lien against the warehouse property of plaintiff for the sum of $3,000, and that such insurance was payable to her as her interest might appear, and she in turn prayed judgment against the defendant insurance company for the amount of said $1,750 policy, and in the alternative for the amount of said $1,250 policy and for costs. Defendant, on March 15, 1915, filed its first amended answer, consisting of a general demurrer, specific denials of liability upon said $1,750 policy, and alleged that same had been duly and legally canceled, and that defendant was only liable for $1,250 or the amount of the last policy written. On the same day defendant also filed its answer to the plea of intervener, Miss Fannie Manlove, consisting of a general demurrer and specific denials, the same as contained in its answer to plaintiff's petition, and asked to be subrogated to the rights of intervener. Plaintiff on March 15, 1915, filed his first supplemental petition, consisting of general demurrer, special exceptions, specific denials, including a denial under oath that E. M. Cape was agent for plaintiff, or had authority to cancel any insurance for him. On same day intervener filed a supplemental petition, consisting of general demurrer, the adoption of the allegations of plaintiff's supplemental petition. Thereafter, on same date, defendant filed its supplemental answer, joining issue upon the allegations of plaintiff's original and supplemental petitions, and on same day filed supplemental answer to plea of intervention, consisting of general demurrer and general denial. Thereafter, on same day, plaintiff filed a second supplemental petition, and on the same day intervener filed her supplemental petition.

"Upon the pleading above mentioned a trial was had in the district court before the judge and a jury. The said cause was submitted upon special issue, and the only issue submitted was found in favor of plaintiff. The defendant thereupon filed its motion to render judgment in favor of the defendant upon the $1,750 policy, and in favor of the plaintiff upon the $1,250 policy; and the plaintiff also filed his motion on same date, praying the court to enter judgment in favor of plaintiff upon said $1,750 policy, with interest as prayed, and costs; and the court, having heard the said motions, entered judgment in favor of defendant upon said $1,750 policy and in favor of plaintiff upon said $1,250 policy. The plaintiff W. D. Glasscock filed his motion for new trial, and the intervener, Miss Fannie Manlove, on same date filed her motion for new trial, and, the court having heard said motion of both plaintiff and intervener, same were in all things overruled, to which action of the court plaintiff and intervener each then and there excepted, and gave notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District at Austin. Thereafter, plaintiff W. D. Glasscock filed his appeal bond, and

intervener also filed her appeal bond. Afterwards plaintiff filed his statement of facts and bills of exception, and now brings this case to this honorable court for review."

The trial court submitted but one issue to the jury, and that was to find whether or not O'Dell Douglas, as agent of the defendant insurance company, collected and received the premiums on the $1,750 policy, to which special issue the jury answered, "Yes." Upon the verdict of the jury the plaintiff Glasscock and the intervener, Miss Manlove, were entitled to a judgment upon the $1,750 policy, unless the undisputed testimony clearly showed that the policy referred to had been canceled by appellant in the manner prescribed in the policy, or that, by agreement between the parties, the other policy for $1,250 had been substituted for the one for $1,750. The wording of the loss payable clause in the policy is as follows:

"It is agreed that any loss or damage ascertained and proven to be due to the assured under this policy shall be held payable to Miss Fannie Manlove as interest may appear, subject, however, to all the terms and conditions of this policy."

Among other provisions of the policy, the following are quoted:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium.

"If with the consent of this company an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

[1] The transactions which it is claimed by the insurance company constituted notice authorizing a cancellation of the $1,750 policy, and also those claimed to show an agreement by which the $1,250 policy was substituted for the other policy, took place between agents of the insurance company and E. M. Cape, an attorney practicing law in the town of San Marcos, where the insured property was located. Appellant Glasscock contends: First, that the testimony fails to show that Cape was his agent upon whom notice could be served as to cancellation, or who had authority to make an agreement substituting the smaller for the larger policy; and, second, that if there was any testimony tending to show such agency, there was also testimony tending to show that no such agency existed, and therefore the question of Cape's agency should have been submitted to the jury, as requested by him, Glasscock. We sustain the latter contention, and reverse the case upon that ground.

While there was testimony tending to show the existence of such agency, there was also testimony to the contrary; and therefore the court erred in refusing to submit that issue to the jury, as requested by Glasscock.

[2] As to appellant Miss Manlove, there was no proof whatever tending to show that Cape was her agent, that she was a party to any agreement to substitute one policy for another, or that she had any notice of the company's intention to cancel the $1,750 policy. She was the holder of a note which was secured by a deed of trust on the insured property, which note appellant Glasscock had agreed to pay, and which deed of trust required the maker of the note, from whom Glasscock bought the property to carry insurance, amounting to at least $2,500, against loss by fire, with loss payable to the holder of the note, as her interest might appear, and with a further provision that if the maker of the note failed to comply, the holder thereof could declare the note due and enforce payment or procure insurance at the expense of the owner of the property. In view of those facts, and of the provisions of the policy hereinbefore set out, it is contended on behalf of Miss Manlove that, whatever may be the rights of Glasscock, she has the right to enforce payment of the $1,750 policy, her debt being in excess of that sum.

It will be observed that the policy stipulates that it may be canceled by the company by giving five days' notice of such cancellation, but does not stipulate to whom such notice shall be given; and this gives rise to the question as to whether or not a cancellation by the company which will bind the owner of the property is also binding upon a mortgagee, to whom no notice of cancellation was given. That question does not appear to have been decided in this state, though there are some expressions by our Supreme Court in Dumphy v. Ins. Co., 174 S. W. 814, tending to support the contention urged in behalf of Miss Manlove. However, that question has been dealt with in some other jurisdictions, and the contention of counsel for Miss Manlove seems to be sustained by the following authorities: Rawl v. Ins. Co., 94 S. C. 299, 77 S. E. 1013, 45 L. R. A. (N. S.) 463, Ann. Cas. 1915A, 1231; Lattan v. Royal Ins. Co., 45 N. J. Law, 453; Lee v. Ins. Co., 154 N. C. 446, 70 S. E. 819, 1004. See, also, 19 Cyc. 647, where the text reads as follows:

"The notice should be given to the party to the contract, that is, to the one liable for the payment of the premium. But if the policy is payable to the mortgagee, notice to him is necessary to cut off his rights."

The Rawl Case, supra, was quite similar to the instant case, and provided that the loss, if any, should be payable to Rawl, as his interest might appear, but subject, nevertheless, to all the conditions of the policy. One of those conditions gave the company the right to cancel by giving five days' notice, without stipulating to whom the notice should be given. Another provision made all the conditions embraced in the policy apply, even if there was an interest therein in favor of the mortgagee. In discussing the question at issue the Supreme Court of South Carolina used the following language:

"But the question here is not as to the result to the mortgagee of an act or omission of the assured producing a forfeiture of the policy, but what, under a reasonable construction of the terms of the policy, did the insurer undertake to do as a condition of its right to cancel? While the insurance company does not undertake to insure the mortgagee's interest, it places his name in the contract as one of the parties in interest; and it usually does so with full knowledge that it is of the utmost importance to the mortgagee that he should have notice of the cancellation of the policy, so that he may either obtain other insurance or insist on payment of his debt. In the face of these conditions, it stipulates in general terms that it may cancel the policy 'by giving five days' notice of such cancellation.' Elsewhere in the policy, in almost all instances, the duties imposed are mentioned as duties imposed on the insured; but the burden placed on itself to give notice of cancellation is not expressly limited to the insured. Is it not reasonable to construe the stipulation as meaning that notice shall be given to all persons who are, by the terms of the policy, interested in maintaining it in force? Such a construction seems all the more fair and just when it is considered that the policy is written by the company, and for that reason the language is to be construed most strongly against it. If the meaning is doubtful, or the language is calculated to mislead, the courts will adopt the meaning most favorable to the maintaining of the liability."

We are satisfied with the reasons given by the court in that case in support of the rule there announced and applied, and we hold that the same rule should apply in this case.

For the reasons above stated, the judgment of the trial court is reversed, and the case remanded for another trial consistent with this opinion.

Reversed and remanded.